UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUSHPAY IP LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>DOES 1-10,<br><br>    Defendant. | Case No. 19-cv-01322-TSH<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR EXPEDITED LIMITED DISCOVERY**<br><br>Re: Dkt. No. 6 |

## I. INTRODUCTION

Pushpay brings this trademark infringement action against Defendants Does 1-10 related to PushyPay Twitter accounts and registration of a "PushyPay" domain name. It has filed an ex parte application for expedited limited discovery to serve subpoenas on Twitter, Inc. and Google, LLC pursuant to Federal Rule of Civil Procedure 45 to determine the true identities of Does 1-10. ECF No. 6. Because Pushpay has demonstrated that good cause exists to allow it to serve the subpoenas, the Court **GRANTS** Pushpay's application.

## II. BACKGROUND

Pushpay and its related companies offer financial goods and services, including those related to a mobile application program designed to run on smart phones and other mobile devices that allows users to make direct, secure mobile payments to registered companies. Compl. ¶ 8, ECF No. 1; *see also id.*, Ex. A, ECF No. 1-1. Pushpay is the owner of the following U.S. trademark registrations and applications: U.S. Trademark Registration No. 5,538,065 and U.S. Trademark Application Serial Nos. 86/984,196 and 86/256,086 for the mark PUSHPAY; U.S. Trademark Registration No. 4,921,353 for the mark ⓟ; U.S. Trademark Registration No. 4,953,885 for the mark ∥P; U.S. Trademark Registration No. 5,628,107 and U.S. Trademark

1  Application Serial No. 87/385,370 for the mark P; U.S. Trademark Registration No. 3,096,435 and
2  U.S. Trademark Application Serial No. 87/067/992 for the mark PUSH TO PAY; U.S. Trademark
3  Registration No. 4,444,457 for the mark JUST PUSH PAY; U.S. Trademark Registration No.
4  4,448,373 for the mark ; and U.S. Trademark Application Serial No. 87/398,945 for the mark
5  PUSH. *Id.* ¶¶ 11-15, Exs. C-F. Through Pushpay's use of the Pushpay marks, and by virtue of its
6  registrations for the Pushpay marks, Pushpay has acquired valuable rights and goodwill in and to
7  such marks. *Id.* ¶ 17.

On or around February 13, 2019, Pushpay became aware of the Twitter account @PushyPay using one or more of the Pushpay marks, including marks identical to and/or confusingly similar to the PUSHPAY, ∥P, ⓟ and P marks described above in its Twitter handle and on its corresponding Twitter page, without Pushpay's authorization. *Id.* ¶ 18; *see also id.*, Ex. G. (screenshots from the Twitter page for @PushyPay). Pushpay alleges the @PushyPay handle, as well as the content incorporated on the corresponding Twitter page, "clearly indicate that Defendants created the @PushyPay account for the singular purpose of tarnishing Pushpay's reputation and damaging its business." *Id.* ¶ 19. Pushpay further alleges that Defendants "knowingly and intentionally requested to 'follow' customers and competitors of Pushpay, as well as Pushpay employees, through its @PushyPay account on Twitter," and customers and/or competitors of Pushpay "were actually confused into believing that the @PushyPay account was owned or operated by, or otherwise associated with, Pushpay." *Id.* ¶¶ 22-23.

On or around February 15, 2019, Pushpay became aware that Defendants created a new Twitter account under the handle @PushyPayTM "for the same flagrant objective of tarnishing Pushpay's reputation and damaging its business." *Id.* ¶ 26. Pushpay submitted infringement and impersonation reports against the PushyPay Twitter accounts and they have been suspended. *Id.* ¶¶ 24-25, 27-28.

Additionally, on February 17, 2019, the domain name <pushypay.com> was registered via a domain privacy service. *Id.* ¶ 30, Ex. I. Pushpay alleges that in view of the timing of the registration of the PushyPay domain name (five days after Pushpay became aware of the @PushyPay account and submitted infringement and impersonation reports against the same),

"there is a reasonable likelihood that the PushyPay domain name was registered by Defendants or an individual or entity associated with Defendants in furtherance of their efforts to tarnish Pushpay's reputation and damage its business." *Id.* ¶ 31.

Pushpay further alleges that "Defendants' unauthorized use of identical and/or confusingly similar marks to one or more of the Pushpay marks in connection with the PushyPay Twitter accounts and the PushyPay domain name is likely to cause," and has actually caused, "confusion in the marketplace as to source, origin, sponsorship and/or affiliation with Pushpay and its distinctive marks." *Id.* ¶¶ 32-33.

Pushpay states it has been unable to determine the identities of Defendants as there is no identifying information on the Twitter pages associated with Defendants' Twitter accounts. Ex. Parte App. at 4 (citing Compl., Ex. G). And, as the PushyPay Twitter accounts are currently suspended, Pushpay is unable to contact Defendants directly through Twitter. *Id.* (citing Compl. ¶¶ 25, 28).

On March 12, 2019, Pushpay filed the complaint in this action against unknown Defendants for trademark infringement, counterfeiting, false designation of origin and unfair competition, and cybersquatting under the Lanham Act, unfair competition under California statutory law, and trademark infringement and unfair competition under California common law. Compl. ¶¶ 36-75. It filed the present motion on March 15, 2019, seeking permission to serve subpoenas on Twitter and Google under Rule 45 to learn the identity of those persons or entities who created and operated the infringing Twitter accounts and registered an infringing domain name. Ex. Parte App. at 2.

### III. LEGAL STANDARD

A court may authorize early discovery before the parties have conferred as required by Federal Rule of Civil Procedure 26(f). *See* Fed. R. Civ. P. 26(d). In the Ninth Circuit, courts use the "good cause" standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference. *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *3 (N.D. Cal. Sep. 3, 2008). Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Id.*; *Semitool, Inc. v.*

1 *Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-77 (N.D. Cal. 2002).

To determine whether a plaintiff has established good cause to learn the identity of a Doe defendant through early discovery, courts examine whether the plaintiff:

> (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court,
>
> (2) recounts the steps taken to locate and identify the defendant,
>
> (3) demonstrates that the action can withstand a motion to dismiss, and
>
> (4) shows that the discovery is reasonably likely to lead to identifying information that will permit service of process.

*Strike 3 Holdings, LLC v. Doe*, 2019 WL 591459, at *1 (N.D. Cal. Feb. 13, 2019) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

In internet infringement cases, courts in this District routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity prior to a Rule 26(f) conference. *UMG Recordings*, 2008 WL 4104214, at *4. "This is because, in considering 'the administration of justice,' early discovery avoids ongoing, continuous harm to the infringed party and there is no other way to advance the litigation." *Id.* "As for the defendant, there is no prejudice where the discovery request is narrowly tailored to only seek their identity. Thus, courts routinely find the balance favors granting a plaintiff leave to take early discovery." *Id.* The Ninth Circuit has also stated that plaintiffs "'should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Cottrell v. Unknown Corr. Officers, 1-10*, 230 F.3d 1366 (9th Cir. 2000) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

### IV. DISCUSSION

Here, Pushpay has established all four of the relevant factors and has therefore demonstrated good cause for the Court to allow early discovery of the Doe Defendants' identities.

First, Pushpay has identified the Doe Defendants with sufficient specificity that the Court can determine they are real persons or entities who can be sued in federal court. "A plaintiff may

4

show that a defendant is a real person or entity by providing evidence of specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process." *Distinct Media Ltd. v. Doe Defendants 1-50*, 2015 WL 13389609, at *2 (N.D. Cal. Sep. 29, 2015) (citation and quotation marks omitted). Here, Pushpay alleges Defendants are the account holders or operators for the PushyPay Twitter accounts and the registrants of the PushyPay domain name. Thus, Pushpay has satisfactorily identified Defendants for purposes of showing good cause to order expedited discovery.

Second, Pushpay has recounted the previous steps it took to locate and identify the Doe Defendants. As discussed above, Pushpay attempted to determine the identities of Defendants by accessing the associated Twitter pages, but it was unable to as there is no identifying information on the Twitter pages associated with the PushyPay Twitter accounts and the accounts are currently suspended. Pushpay has also shown that it attempted to determine who registered the PushyPay domain name but found it is registered under a privacy service concealing the true registrant information. Compl., Ex. I (copy of the Whois record for the PushyPay Domain Name). Thus, Pushpay is unable to obtain Defendants' identifying information without a subpoena.

Third, Pushpay has shown that its infringement claims are likely to survive a motion to dismiss. Trademark infringement requires that Pushpay show Defendants "used (1) a reproduction, counterfeit, copy or colorable imitation of [its] registered trademark; (2) without [its] consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive." *Assef v. Does 1-10*, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015) (citing 15 U.S.C. § 1114(1)(a); *Brookfield Commc'n v. W. Coast Entm't*, 174 F.3d 1036, 1046-47 (9th Cir. 1999)). In its complaint, Pushpay alleges that it owns the trademarks listed above. Compl. ¶¶ 11-15, Exs. C-F. It further alleges that Defendants created the Twitter accounts @PushyPay and @PushyPayTM and registered the domain name <pushypay.com> without its authorization and for the purpose of "tarnishing Pushpay's reputation and damaging its business." *Id.* ¶¶ 18-19, 26, 31. Finally, Pushpay alleges the PushyPay Twitter accounts and PushyPay domain name are "likely to cause and/or ha[ve] actually caused confusion, mistake, and deception among the

general public as to the origin of such accounts and/or domain name, or as to whether Defendants are sponsored by, affiliated with, or otherwise connected to Pushpay." *Id.* ¶ 39. Thus, Pushpay pleads all necessary elements of a trademark cause of action to survive a motion to dismiss. *See Assef*, 2015 WL 3430241, at *2 (authorizing plaintiff to conduct pre-service discovery to ascertain the identities of Doe defendants accused of committing trademark infringement over the Internet); *seescandy.com*, 185 F.R.D. at 579-80 (same).

Fourth, Pushpay has shown that the subpoenas seek information reasonably likely to lead to identifying information that will allow it to effect service of process on the Doe Defendants. Specifically, the subpoenas request that Twitter and Google produce information sufficient to identify the Doe Defendants who created the PushyPay Twitter accounts and PushyPay domain name, including the defendants' names and addresses. *See Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068, at *2 (N.D. Cal. Nov. 4, 2011) (finding fourth factor satisfied where proposed subpoena requested that ISP produce information sufficient to identify Doe defendant who subscribed to its service); *Music Grp. Macao Commercial Offshore Ltd. v. John Does I-IX*, 2014 WL 11010724, at *2 (W.D. Wash. July 18, 2014) ("Plaintiffs' discovery request is narrowly tailored to seek identifying information connected to two Twitter, Inc. accounts and reasonably likely to lead to the production of information that will permit Plaintiffs to serve process."). Moreover, upon service of a Rule 45, Twitter, Google, and the Doe Defendants will have an opportunity to raise objections through a motion to quash.

In sum, Pushpay has shown good cause exists to issue a Rule 45 subpoena to discover the Doe Defendants' identities.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Pushpay's motion.

It is hereby **ORDERED** that Pushpay may immediately serve Rule 45 subpoenas on Twitter, Inc. and Google, LLC to learn the true name(s) and contact information of the Doe Defendants. A copy of this Order must be attached to the subpoenas, and any information disclosed to Pushpay in response to the subpoena may be used by Pushpay solely for the purpose of serving the Doe Defendants and prosecuting the claims asserted in the complaint.

It is further **ORDERED** that Twitter and Google will have 30 days from the date of service to serve the Doe Defendant(s) with a copy of the subpoena and a copy of this Order.

It is further **ORDERED** that the Doe Defendant(s) will have 30 days from the date of service to file any motions contesting the subpoena with this Court. If that 30-day period lapses without the Doe Defendant(s) contesting the subpoena, Twitter and Google shall produce the information responsive to the subpoena to Pushpay within 10 days.

It is further **ORDERED** that Pushpay shall not publicly disclose any of the Doe Defendants' identifying information until they have had the opportunity to file a motion with this Court for leave to proceed anonymously and that motion is ruled on by the Court. Doe Defendants will have 30 days from the date of service to file such a motion, and they may file the motion under seal.

**IT IS SO ORDERED.**

Dated: March 25, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge